UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
DANIEL ZERAFA, on behalf of himself, individually,
and all other persons similarly situated,

                                                        Docket No.:

                 Plaintiff,

        -against-                                 **COMPLAINT**

MIDAS PROPERTY MANAGEMENT CORP., MIDAS
MANAGEMENT ASSOC. INC., THE HERKIMER
EXECUTIVE HOUSE, INC., 29-33 CONVENT AVENUE
HOUSING DEVELOPMENT FUND CORPORATION,
MICHAEL PADERNACHT, DANIEL PADERNACHT,
CHRISTOPHER LIM, GERARD KARLEN, and NICHOLAS
CASUCCI,

                        Defendants.
---------------------------------------------------------------------------X

       Plaintiff, Daniel Zerafa, on behalf of himself, individually, and all other persons similarly situated, by and through his counsel, the Law Office of Peter A. Romero PLLC, complaining of the Defendants, Midas Property Management Corp., Midas Management Assoc. Inc., The Herkimer Executive House, Inc., 29-33 Convent Avenue Housing Development Fund Corporation d/b/a 29-33 Convent Avenue HDFC, Michael Padernacht, Daniel Padernacht, Christopher Lim, Gerard Karlen, and Nicholas Casucci (collectively as "Defendants"), allege as follows:

## NATURE OF THE CLAIM

       1.     Plaintiff brings this action to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations ("NYLL"), for failure to pay the minimum wage rate under the NYLL, failure to pay agreed upon rates of pay under the FLSA and NYLL, for failure to issue timely payment of wages pursuant to the FLSA and NYLL § 191, failure to furnish a wage notice upon his hire under NYLL § 195(1), failure to

provide accurate wage statements for each pay period under NYLL § 195(3), for unlawful deductions from wages pursuant to NYLL § 193, for unjust enrichment, quantum meruit and breach of contract under New York common law, and, with respect to Defendant Karlen, for violations of the New York common law in the form of slander *per se* and slander *per quod*, and any other claim(s) that can be inferred from the facts set forth herein.

2.    Plaintiff brings this lawsuit against the Defendants Midas Property Management Corp., Midas Management Assoc. Inc., Michael Padernacht, Daniel Padernacht, Christopher Lim, Gerard Karlen, and Nicholas Casucci (hereinafter as "Midas Defendants') pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Midas Defendants' willful violations of the FLSA. Plaintiff brings his claims under the NYLL on behalf of himself, individually, and on behalf of any Midas FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

3.    Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of the Midas Defendants' violations of the NYLL and the supporting New York State Department of Labor regulations.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York.

## THE PARTIES

6.      At all times relevant, Plaintiff Daniel Zerafa ("Zerafa" or "Plaintiff") was a resident of the County of Bronx, State of New York.

7.      At all times relevant, Plaintiff Zerafa was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL § 190(2), and a "manual worker" within the meaning of NYLL § 190(4).  Plaintiff is neither a public official nor a public figure.

8.      At all times relevant, Defendant Midas Property Management Corp. is and was a domestic business corporation with multiple business locations and has a principal place of business at 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463.

9.      At all relevant times, Defendant Midas Property Management Corp. was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to tools, cleaning supplies, painting equipment, paint, construction materials, garbage and recycling receptacles, garbage bags, paper, pens, cellular telephones, and other tools, equipment and materials.

10.     At all times relevant, Defendant Midas Property Management Corp. was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

11.     At all times relevant, Defendant Midas Property Management Corp. employed eleven or more employees.

12.    At all times relevant, Defendant Midas Management Assoc. Inc. is and was a domestic business corporation with multiple business locations and has a principal place of business at 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463.

13.    At all relevant times, Defendant Midas Management Assoc. Inc. was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to tools, cleaning supplies, painting equipment, paint, construction materials, garbage and recycling receptacles, garbage bags, paper, pens, cellular telephones, and other tools, equipment and materials.

14.    At all times relevant, Defendant Midas Management Assoc. Inc. was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

15.    At all times relevant, Defendant Midas Management Assoc. Inc. employed eleven or more employees.

16.    At all times relevant, Defendant The Herkimer Executive House, Inc. is and was a domestic business corporation with principal places of business at 4200 Herkimer Place, Bronx, New York 10470 and 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463.

17.    At all relevant times, Defendant The Herkimer Executive House, Inc. was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to tools, cleaning supplies, painting equipment, paint, construction

materials, garbage and recycling receptacles, garbage bags, paper, pens, cellular telephones, and other tools, equipment and materials.

18.     At all times relevant, Defendant The Herkimer Executive House, Inc. was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

19.     At all times relevant, Defendant 29-33 Convent Avenue Housing Development Fund Corporation d/b/a 29-33 Convent Avenue HDFC (hereinafter "29-33 Convent Avenue HDFC") is and was a domestic housing development fund company with principal places of business at 29-33 Convent Avenue, New York, New York 10027 and 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463.

20.     At all relevant times, Defendant 29-33 Convent Avenue HDFC was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to tools, cleaning supplies, painting equipment, paint, construction materials, garbage and recycling receptacles, garbage bags, paper, pens, cellular telephones, and other tools, equipment and materials.

21.     At all times relevant, Defendant 29-33 Convent Avenue HDFC was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

22.     Defendants Midas Property Management Corp. and Midas Management Assoc. Inc. (both collectively as "Midas Management") are a single company operating under two entity names as a common enterprise, with interrelated operations, common owners and officers, common management, a centralized control of labor relations, and common financial control

within their businesses, including with respect to their payroll for employees, and operate from a common principal principle place of business.

23.     Defendants Midas Management employed Plaintiff to work at numerous locations, including for The Herkimer Executive House, Inc., 29-33 Convent Avenue HDFC, Parkside Place Condominium Association, Inc., Nereid Funding Corp., and 110 Terrace Ave Corp. (collectively as "Apartment Corporations").

24.     Defendants Midas Management and The Herkimer Executive House, Inc. are three corporations that operate jointly as a common enterprise.  Midas Management and The Herkimer Executive House, Inc. jointly operate an apartment building and jointly employ Plaintiff.  Within the scope of Defendant The Herkimer Executive House, Inc.'s business, Defendants Midas Management and The Herkimer Executive House, Inc. share interrelated operations, common management, a centralized control of labor relations, and common financial control within their businesses, including with respect to their payroll for employees.  Defendants Midas Management and The Herkimer Executive House, Inc. share common facilities at their mutual places of business at 4200 Herkimer Place, Bronx, New York 10470 and 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463.  Additionally, Plaintiff cannot ascertain which corporation is his employer or which corporation he is performing services for at any given time as the services are mutually provided to both corporations at all times and for the mutual benefit and interest of both corporations simultaneously.  Moreover, Defendants Midas Management and The Herkimer Executive House, Inc. jointly supervised Plaintiff, including overseeing his day-to-day activities, duties, and scheduling, had authority to make payroll decisions regarding his employment, had authority to make hiring, firing and other personnel decisions for Plaintiff, were active in the day to day management of Defendant The Herkimer Executive House, Inc., including the payment of

wages to Plaintiff and determining what wages were paid to Plaintiff, and were responsible for maintaining personnel records for Plaintiff.

25.     Defendants Midas Management and 29-33 Convent Avenue HDFC are three corporations that operate jointly as a common enterprise.  Defendants Midas Management and 29-33 Convent Avenue HDFC jointly operate multiple apartment buildings and jointly employed Plaintiff.  Within the scope of Defendant 29-33 Convent Avenue HDFC's business, Defendants Midas Management and 29-33 Convent Avenue HDFC share interrelated operations, common management, a centralized control of labor relations, and common financial control within their businesses, including with respect to their payroll for employees.  Defendants Midas Management and 29-33 Convent Avenue HDFC share common facilities at their mutual places of business at 29-33 Convent Avenue, New York, New York 10027 and 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463.   Additionally, Plaintiff cannot ascertain which corporation is his employer or which corporation he is performing services for at any given time as the services are mutually provided to both corporations at all times and for the mutual benefit and interest of both corporations simultaneously.  Moreover, Defendants Midas Management and 29-33 Convent Avenue HDFC jointly supervised Plaintiff, including overseeing his day-to-day activities, duties, and scheduling, had authority to make payroll decisions regarding his employment, had authority to make hiring, firing and other personnel decisions for Plaintiff, were active in the day to day management of Defendant 29-33 Convent Avenue HDFC, including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and were responsible for maintaining personnel records for Plaintiff.

26.     Defendants Midas Management and Parkside Place Condominium Association, Inc. are three corporations that operate jointly as a common enterprise.   Defendants Midas

Management and Parkside Place Condominium Association, Inc. jointly operate multiple apartment buildings and jointly employed Plaintiff.  Within the scope of Parkside Place Condominium Association, Inc.'s business, Defendants Midas Management and Parkside Place Condominium Association, Inc. share interrelated operations, common management, a centralized control of labor relations, and common financial control within their businesses, including with respect to their payroll for employees.  Defendants Midas Management and Parkside Place Condominium Association, Inc. share common facilities at their mutual places of business at 3254-3258 Parkside Place, Bronx, New York 10467 and 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463.  Additionally, Plaintiff cannot ascertain which corporation is his employer or which corporation he is performing services for at any given time as the services are mutually provided to both corporations at all times and for the mutual benefit and interest of both corporations simultaneously.  Moreover, Defendants Midas Management and Parkside Place Condominium Association, Inc. jointly supervised Plaintiff, including overseeing his day-to-day activities, duties, and scheduling, had authority to make payroll decisions regarding his employment, had authority to make hiring, firing and other personnel decisions for Plaintiff, were active in the day to day management of Defendant Parkside Place Condominium Association, Inc., including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and were responsible for maintaining personnel records for Plaintiff.  Moreover, Defendants Midas Management provided Plaintiff with his pay for work performed at these properties.

27.     Defendants Midas Management and Nereid Funding Corp. are three corporations that operate jointly as a common enterprise.  Defendants Midas Management and Nereid Funding Corp. jointly operate multiple apartment buildings and jointly employed Plaintiff.  Within the scope of Nereid Funding Corp.'s business, Defendants Midas Management and Nereid Funding

Corp. share interrelated operations, common management, a centralized control of labor relations, and common financial control within their businesses, including with respect to their payroll for employees. Defendants Midas Management and Nereid Funding Corp. share common facilities at their mutual places of business at 607 Nereid Avenue, Bronx, New York 10470 and 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463. Additionally, Plaintiff cannot ascertain which corporation is his employer or which corporation he is performing services for at any given time as the services are mutually provided to both corporations at all times and for the mutual benefit and interest of both corporations simultaneously. Moreover, Defendants Midas Management and Nereid Funding Corp. jointly supervised Plaintiff, including overseeing his day-to-day activities, duties, and scheduling, had authority to make payroll decisions regarding his employment, had authority to make hiring, firing and other personnel decisions for Plaintiff, were active in the day to day management of Defendant Nereid Funding Corp., including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and were responsible for maintaining personnel records for Plaintiff.

28.    Defendants Midas Management and 110 Terrace Ave Corp. are three corporations that operate jointly as a common enterprise. Defendants Midas Management and 110 Terrace Ave Corp. jointly operate multiple apartment buildings and jointly employed Plaintiff. Within the scope of 110 Terrace Ave Corp.'s business, Defendants Midas Management and 110 Terrace Ave Corp. share interrelated operations, common management, a centralized control of labor relations, and common financial control within their businesses, including with respect to their payroll for employees. Defendants Midas Management and 110 Terrace Ave Corp. share common facilities at their mutual places of business at 110-116 Terrace View, Bronx, New York 10463 and 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463. Additionally, Plaintiff cannot ascertain

which corporation is his employer or which corporation he is performing services for at any given time as the services are mutually provided to both corporations at all times and for the mutual benefit and interest of both corporations simultaneously.   Moreover, Defendants Midas Management and 110 Terrace Ave Corp. jointly supervised Plaintiff, including overseeing his day-to-day activities, duties, and scheduling, had authority to make payroll decisions regarding his employment, had authority to make hiring, firing and other personnel decisions for Plaintiff, were active in the day to day management of Defendant 110 Terrace Ave Corp., including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and were responsible for maintaining personnel records for Plaintiff.   Moreover, Defendants Midas Management provided Plaintiff with his pay for work performed at these properties.

29.     At all times relevant, Defendant Michael Padernacht is and/or was an officer or owner of Midas Property Management Corp., had authority to make payroll decisions for Midas Management and the Apartment Corporations, had authority to make hiring, firing and other personnel decisions for Midas Management and the Apartment Corporations, including the decision to terminate Plaintiff's employment, was active in the day to day management of Midas Management and the Apartment Corporations, including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and is liable to Plaintiff as an "employer" within the meaning of the FLSA and NYLL.

30.     At all times relevant, Defendant Daniel Padernacht is and/or was an officer or owner of Midas Management Assoc. Inc., had authority to make payroll decisions for Midas Management and Nereid Funding Corp., had authority to make hiring, firing and other personnel decisions for Midas Management and Nereid Funding Corp., including the decision to terminate Plaintiff's employment, was active in the day to day management of Midas Management and

Nereid Funding Corp., including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and is liable to Plaintiff as an "employer" within the meaning of the FLSA and NYLL.

31.    At all times relevant, Defendant Christopher Lim is and/or was a property manager for Midas Management, had authority to make payroll decisions for Midas Management and 29-33 Convent Avenue HDFC, had authority to make hiring, firing and other personnel decisions for Midas Management and 29-33 Convent Avenue HDFC, including the decision to terminate Plaintiff's employment, was active in the day to day management of Midas Management and the 29-33 Convent Avenue HDFC, including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and is liable to Plaintiff as an "employer" within the meaning of the FLSA and NYLL.

32.    At all times relevant, Defendant Gerard Karlen is and/or was a property manager for Midas Management, had authority to make payroll decisions for Midas Management and The Herkimer Executive House, Inc., had authority to make hiring, firing and other personnel decisions for Midas Management and The Herkimer Executive House, Inc., including the decision to terminate Plaintiff's employment, was active in the day to day management of Midas Management and The Herkimer Executive House, Inc., including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and is liable to Plaintiff as an "employer" within the meaning of the FLSA and NYLL.

33.    At all times relevant, Defendant Nicholas Casucci is and/or was a property manager for Midas Management, had authority to make payroll decisions for Midas Management, Parkside Place Condominium Association, Inc. and 110 Terrace Ave Corp., had authority to make hiring, firing and other personnel decisions for Midas Management, Parkside Place Condominium

Association, Inc. and 110 Terrace Ave Corp., including the decision to terminate Plaintiff's employment, was active in the day to day management of Midas Management, Parkside Place Condominium Association, Inc. and 110 Terrace Ave Corp., including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and is liable to Plaintiff as an "employer" within the meaning of the FLSA and NYLL.

## FACTS

34.    Defendants manage fifty or more properties, including rental, cooperative and condominium apartment buildings, in and around New York City, including within Manhattan and the Bronx.

35.    Defendants Midas Defendants employed Plaintiff as a non-exempt superintendent and laborer from on or about August 17, 2017 through on or about September 9, 2021.

36.    Defendant The Herkimer Executive House, Inc. employed Plaintiff as a non-exempt superintendent and laborer from on or about June 12, 2019 through on or about September 9, 2021.  As such, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen jointly employed Plaintiff from on or about June 12, 2019 through on or about September 9, 2021.

37.    Defendant 29-33 Convent Avenue HDFC employed Plaintiff as a non-exempt superintendent and laborer from on or about August 17, 2017 through on or about August 10, 2021. As such, Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht and Christopher Lim jointly employed Plaintiff from on or about August 17, 2017 through on or about August 10, 2021.

38.    Parkside Place Condominium Association, Inc. employed Plaintiff as a non-exempt superintendent and laborer from in or about January or February 2018 through on or about July 8,

2021. As such, Defendants Midas Management, Parkside Place Condominium Association, Inc., Michael Padernacht and Nicholas Casucci jointly employed Plaintiff from in or about January or February 2018 through on or about July 8, 2021.

39.     Nereid Funding Corp. employed Plaintiff as a non-exempt superintendent and laborer from in or about Summer 2020 through in or about Winter 2020. As such, Defendants Midas Management, Nereid Funding Corp., Michael Padernacht and Daniel Padernacht jointly employed Plaintiff from in or about Summer 2020 through in or about Winter 2020.

40.     110 Terrace Ave Corp. employed Plaintiff as a non-exempt superintendent and laborer from in or about January or February 2018 through on or about July 8, 2021. As such, Defendants Midas Management, 110 Terrace Ave Corp., Michael Padernacht and Nicholas Casucci jointly employed Plaintiff from in or about January or February 2018 through on or about July 8, 2021.

41.     Throughout his employment, Plaintiff was responsible for performing various manual tasks for Defendants, including but not limited to remodeling apartments, painting, plastering, recycling and garbage removal, snow removal, sweeping, cleaning, deep cleaning during the Covid-19 pandemic, boiler repairs, routine repairs, emergency repairs, and other services as needed, as well as significant periods of standing, walking and lifting.

42.     Throughout his employment, Plaintiff performed these services in numerous buildings managed by Defendants.

43.     Throughout his employment, Defendants required Plaintiff to regularly work in excess of forty hours each workweek.

44.     Throughout his employment, Plaintiff regularly worked seven days per workweek. Specifically, during much of his employment until his employment ended, Plaintiff regularly worked for Defendants Midas Defendants and the Apartment Corporations as follows:

i.      Plaintiff regularly worked on Monday through Friday from approximately 5:30 a.m. until 7:00 a.m. at The Herkimer Executive House, Inc. property;

ii.     Plaintiff regularly traveled from The Herkimer Executive House, Inc. property to the 29-33 Convent Avenue HDFC properties, constituting compensable work, on Monday through Friday from approximately 7:00 a.m. until 7:30 a.m.

iii.    Plaintiff regularly worked on Monday through Friday from approximately 7:30 a.m. until 4:30 p.m. at the 29-33 Convent Avenue HDFC properties;

iv.     Plaintiff regularly traveled from the 29-33 Convent Avenue HDFC properties to The Herkimer Executive House, Inc. property, constituting compensable work, on Monday through Friday from approximately 4:30 p.m. until 5:00 p.m.;

v.      Plaintiff regularly worked on Monday through Friday from approximately 5:00 p.m. until 10:00 p.m., or sometimes even later, at The Herkimer Executive House, Inc. property;

vi.     Plaintiff regularly worked on Saturday and Sunday from approximately 7:00 a.m. until 4:00 p.m. at The Herkimer Executive House, Inc. property;

vii.    Plaintiff regularly traveled for approximately thirty minutes from The Herkimer Executive House, Inc. property to the 29-33 Convent Avenue HDFC properties, constituting compensable work, on Saturday and Sunday after 4:00 p.m.;

viii.   Plaintiff regularly worked 1.5 hours on both Saturday and Sunday at the 29-33 Convent Avenue HDFC properties.

45.     Throughout his employment, Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht and Christopher Lim afforded Plaintiff an uninterrupted meal break of thirty minutes on most workdays during Monday through Friday.

46.     Throughout his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen did not provide Plaintiff with an uninterrupted meal break of thirty minutes on any workday.

14

47.    Additionally, throughout his employment, Defendants Midas Management, Parkside Place Condominium Association, Inc., Michael Padernacht and Nicholas Casucci required Plaintiff to collect and take out garbage and recycling, and to clean the premises, during the evenings after his regular shift ended on three days per workweek, which commonly required Plaintiff to perform between one hour to one and one-half hours of work for each instance, amounting to three to four and one-half hours of additional work each workweek to complete outside of his regular work hours.

48.    Additionally, Defendants Midas Management, Parkside Place Condominium Association, Inc., Michael Padernacht and Nicholas Casucci required Plaintiff to travel approximately thirty minutes from his prior worksite to Parkside Place Condominium Association, Inc. on three days per week to perform these garbage and cleaning duties, amounting to one and one-half hours of additional work performed outside of his regular work hours.

49.    Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen then required Plaintiff to travel approximately thirty minutes from Parkside Place Condominium Association, Inc. to The Herkimer Executive House, Inc. on three days per week to perform his on call services, amounting to one and one-half hours of additional work performed outside of his regular work hours.

50.    Additionally, throughout his employment, Defendants Midas Management, Nereid Funding Corp., Michael Padernacht and Daniel Padernacht required Plaintiff to collect and take out garbage and recycling, and to clean the premises, during the evenings after his regular shift ended on Wednesday and Sunday of each workweek, which commonly required Plaintiff to perform between thirty minutes to one hour of work for each instance, amounting to one to two hours of additional work each workweek to complete outside of his regular work hours.

51.     Additionally, Defendants Midas Management, Nereid Funding Corp., Michael Padernacht and Daniel Padernacht required Plaintiff to travel approximately thirty minutes from his prior worksite to Nereid Funding Corp. two days per week to perform these garbage and cleaning duties, amounting to one hour of additional work performed outside of his regular work hours.

52.     Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen then required Plaintiff to travel approximately thirty minutes from Nereid Funding Corp. to The Herkimer Executive House, Inc. two days per week to perform his on call services, amounting to one hour of additional work performed outside of his regular work hours.

53.     Additionally, throughout his employment, Midas Management, 110 Terrace Ave Corp., Michael Padernacht and Nicholas Casucci required Plaintiff to collect and take out garbage, to clean the premises, perform snow removal, and boiler repairs after his regular shift ended during each workweek, requiring Plaintiff to perform additional hours of work each workweek to complete outside of his regular work hours.

54.     Additionally, Defendants Midas Management, 110 Terrace Ave Corp., Michael Padernacht and Nicholas Casucci required Plaintiff to travel approximately thirty minutes from his prior worksite to 110 Terrace Ave Corp. for each instance of work performed at 110 Terrace Ave Corp.'s properties, constituting additional periods of work performed outside of his regular work hours.

55.     Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen then required Plaintiff to travel approximately thirty minutes from 110 Terrace Ave Corp. to The Herkimer Executive House, Inc. after each instance of work

performed at 110 Terrace Ave Corp.'s properties, constituting additional periods of work performed outside of his regular work hours.

56.    Accordingly, during most of his employment, Defendants required Plaintiff to work, Plaintiff did regularly work, well in excess of forty hours during each workweek for these regular hours worked.

57.    Throughout his employment, Defendants Midas Management and the Apartment Corporations required Plaintiff to respond to and remedy any emergencies encountered by Defendants Midas Management and the Apartment Corporations during his regular workday and during his hours off work, including after 10:00 p.m. until his morning shift began each workday and on weekends.    Throughout his employment, Defendants Midas Management and the Apartment Corporations required Plaintiff to respond to and remedy such emergencies encountered by its tenants during hours outside of his regular workday at least once per workweek, and sometimes even more often each workweek.    These services frequently required Plaintiff to return to Defendants Midas Management's and the Apartment Corporations' various premises when he was not onsite to respond to such emergencies.    These emergency services commonly required two to four hours of work to complete for each instance, and could take even more hours to accomplish, depending on the nature of the emergency.    Plaintiff reported these instances of performing emergency work to Defendants, including emergencies that occurred outside of his regular workday.    In each instance, Defendants Midas Management's and the Apartment Corporations required Plaintiff to travel approximately thirty minutes from his home to the respective Apartment Corporation to address the emergency and then travel another approximately thirty minutes to The Herkimer Executive House, Inc. to perform his on call services, amounting to one hour of additional work performed outside of his regular work hours for each emergency

situation that occurred.  Defendants did not pay Plaintiff any additional compensation for these hours worked.

58.    Once per month, Defendants Midas Management required Plaintiff to appear at their location at 3605 Sedgwick Avenue, Suite A1, Bronx, New York 10463 on Saturdays to pick up paychecks for his work performed.  During this visit, Defendants Midas Management required Plaintiff to clean the premises, take out any garbage, install air conditioning units, or any other tasks needed, requiring him to perform an additional thirty minutes to one hour of work per workweek during each instance.  Defendants Midas Management did not pay Plaintiff any wages at any rate of pay for this work performed.

59.    Throughout his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen required Plaintiff to be on-call and on premises from 10:00 p.m. until his morning shift every night, seven days per week, to respond to tenant requests and perform work as needed.

60.    Throughout his employment, Defendants Midas Management and Apartment Corporations required Plaintiff to be on-call at all times, twenty-four hours per day, seven days per week, to respond to tenant requests and perform work as needed.

61.    Throughout his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen paid Plaintiff a fixed weekly salary of $600.00, regardless of his number of hours worked each workweek.

62.    Throughout his employment, Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht and Christopher Lim paid Plaintiff an hourly rate of pay of $19.00 per hour for all hours worked up to forty hours per workweek.  Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht and Christopher Lim did not

pay Plaintiff any compensation at any rate of pay for his hours worked at the 29-33 Convent Avenue HDFC properties after forty hours per workweek.

63.     Throughout his employment, Defendants Midas Management, Parkside Place Condominium Association, Inc., Michael Padernacht and Nicholas Casucci paid Plaintiff a fixed monthly salary of $600.00, regardless of his number of hours worked each workweek.

64.     Throughout his employment, Defendants Midas Management, Nereid Funding Corp., Michael Padernacht and Daniel Padernacht paid Plaintiff a fixed monthly salary of $200.00, regardless of his number of hours worked each workweek.

65.     Throughout his employment, Defendants Midas Management, 110 Terrace Ave Corp., Michael Padernacht and Nicholas Casucci paid Plaintiff a fixed monthly salary of $750.00, regardless of his number of hours worked each workweek.

66.     Throughout his employment, despite regularly working in excess of forty hours per workweek, Defendants failed to pay Plaintiff at the statutorily required overtime rate of one and one-half times the minimum wage or his regular rate of pay, whichever is greater, for hours worked in excess of forty hours in violation of the FLSA and NYLL.

67.     Throughout, Defendants commonly required Plaintiff to address emergency situations, perform repairs or special tasks outside of his regular hours worked.  Defendants did not pay Plaintiff any additional compensation or, for work performed at an hourly rate of pay, Defendants did not pay Plaintiff at any rate of pay, for these hours worked.

68.     Throughout, Defendants commonly required Plaintiff to travel between his respective worksites as part of his workday.  Defendants did not pay Plaintiff any additional compensation or, for work performed at an hourly rate of pay, Defendants did not pay Plaintiff at any rate of pay, for these hours worked.

69.     Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht and Christopher Lim commonly failed to pay Plaintiff for all of his hours worked, instead ignoring several hours of work each week.  As a result of this practice, Defendants did not pay Plaintiff at any rate of pay for these hours worked.

70.     Throughout in or about March 2020, Plaintiff performed additional work for Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen by painting a garage at The Herkimer Executive House, Inc. properties.  Throughout in or about March 2020, Plaintiff often engaged in these painting duties from approximately 8:00 p.m. until 3:00 a.m.  Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen did not pay Plaintiff any additional compensation for these hours worked.

71.     On July 8, 2021, Plaintiff ended his regular work schedule with all Defendants. However, from in or about August 8, 2021 until on or about September 9, 2021, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen required Plaintiff to restart and attend to their faulty boiler and assist contractors with building repairs approximately five to six times at The Herkimer Executive House, Inc. properties, requiring Plaintiff to perform approximately thirty minutes to one hour of work for each instance. Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen did not pay Plaintiff any compensation at any rate of pay for these hours worked.

72.     As a result of Defendants Midas Management's, The Herkimer Executive House, Inc.'s, Michael Padernacht's and Gerard Karlen's failure to pay Plaintiff any compensation for this work performed between in or about August 8, 2021 until on or about September 9, 2021, these Defendants failed to pay Plaintiff at the mandated minimum wage under the FLSA and NYLL, at

his agreed upon rate of pay under the NYLL, and failed to pay him in accordance with New York common law,

73.    Moreover, during certain workweeks of his employment, Plaintiff's salary and wages, when converted to an hourly regular rate of pay by operation of law for each pay period, results in an hourly rate of pay below the mandated minimum wage in violation of the NYLL.

74.    Throughout his employment, Defendants failed to pay Plaintiff for certain hours worked during his workweeks, thereby failing to pay him at any rate of pay for many hours of work during certain workweeks.  Thus, due to Defendants' practice of failing to compensate Plaintiff for certain hours worked, Defendants have deprived Plaintiff of compensation for many hours at his regular or overtime rates of pay, or at his agreed upon rates of pay, and failed to pay him in accordance with New York common law, during each such workweek.

75.    Throughout his employment, Defendants did not track or record Plaintiff's hours worked or his number of hours worked.

76.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and NYLL by failing to track or maintain records of hours worked by Plaintiff and failing to pay him in accordance with his hours worked in order to intentionally deprive Plaintiff of compensation.

77.    Moreover, throughout his employment, Defendants were well aware of the requirements of the FLSA and NYLL, including the requirement to pay Plaintiff overtime compensation for his hours worked in excess of forty hours per workweek, yet  willfully and intentionally  violated the FLSA and NYLL with impunity.  Indeed, as an example, throughout two months during the summer of 2019, Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht and Christopher Lim required Plaintiff to perform an additional four

hours of work on both Saturday and on Sunday, for an additional eight hours of work per workweek, to complete additional duties while these Defendants were short staffed. For this additional eight hours of work, and this work only, Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht and Christopher Lim paid Plaintiff for these eight hours at the statutorily required overtime rate of one and one-half times his regular rate of pay in accordance with the FLSA and NYLL.

78.     Throughout his employment, Plaintiff regularly performed manual tasks during the majority of his hours worked and, therefore, Plaintiff spent more than twenty-five percent of his hours worked each week performing such manual tasks.

79.     Throughout his employment, Defendants Midas Management, Parkside Place Condominium Association, Inc., Nereid Funding Corp., 110 Terrace Ave Corp., Michael Padernacht, Daniel Padernacht, and Nicholas Casucci paid Plaintiff by check once per month.

80.     Thus, throughout his employment, Defendants Midas Management, Michael Padernacht, Daniel Padernacht, and Nicholas Casucci failed to timely pay Plaintiff his wages earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned for work performed jointly for Midas Management, Parkside Place Condominium Association, Inc., Nereid Funding Corp., 110 Terrace Ave Corp., Michael Padernacht, Daniel Padernacht, and Nicholas Casucci in violation of NYLL § 191, and failed to timely pay Plaintiff his wages earned under the FLSA.

81.     Additionally, because Defendants Midas Management, The Herkimer Executive House, Inc., 29-33 Convent Avenue HDFC, Michael Padernacht, Christopher Lim, and Gerard Karlen failed to pay Plaintiff for certain hours worked during his workweeks, thereby failing to pay him at any rate of pay for many hours of work during certain workweeks, these Defendants

failed to timely pay Plaintiff his wages earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned in violation of NYLL § 191, and failed to timely pay Plaintiff his wages earned under the FLSA.

82.    Throughout their employment, Plaintiff, Midas FLSA Collective Action Plaintiffs, and Class Members suffered an underpayment of wages each pay period because Defendant Midas Management, Michael Padernacht, Daniel Padernacht, and Nicholas Casucci failed to pay their wages on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, as required by NYLL § 191, or within a timely period as required by the FLSA.

83.    Plaintiff, Midas FLSA Collective Action Plaintiffs, and Class Members are manual workers who depend upon their wages for sustenance and suffer harm that is particularly acute when their wages are delayed, and they are temporarily deprived of their earned wages.

84.    By withholding the wages due and owing to the Plaintiff, Midas FLSA Collective Action Plaintiffs, and Class Members, Defendants deprived Plaintiff, Midas FLSA Collective Action Plaintiffs, and Class Members of use of those funds to meet their everyday expenses and provide for their basic needs including, but not limited to, food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and services, insurance, automobile payments, fuel for vehicles, education, daycare or childcare, child-related expenses, public transportation, and other basic living expenses.  Further, the earned wages were not available to Plaintiffs, Midas FLSA Collective Action Plaintiffs, and Class Members to invest and grow, save or accumulate interest.

85.    Defendants' failure to timely pay wages earned caused Plaintiff, Midas FLSA Collective Action Plaintiffs, and Class Members to suffer the same or similar harms.

23

86.    As a condition of his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen offered as a term of employment for, and thereby promised to pay, Plaintiff an additional $100.00 per month to pay the monthly costs for a cell phone.  These Defendants required Plaintiff to use this cell phone as part of his employment and to perform his work duties, and such expenses constitute a business expense to be borne by those Defendants.

87.    Throughout his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen required Plaintiff to pay for this cell phone from his own funds.  Throughout his employment, these Defendants did not reimburse him for these expenditures or pay him the $100.00 monthly payment to be provided as a term of his employment intended to pay for these expenses.

88.    By doing so, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen shifted a clear business expense that must fall on those Defendants onto their employee, the Plaintiff, in a manner that is solely in those Defendants' interests, and against Plaintiff's interests and without his authorization.  Thus, throughout his employment, those Defendants made numerous unlawful deductions to Plaintiff's wages earned in violation of NYLL § 193 and New York common law.

89.    Defendants failed to provide Plaintiff with a notice and acknowledgement of his wage rate upon Plaintiff's time of hire as required by NYLL § 195(1).

90.    Defendants failed to provide Plaintiff with accurate wage statements indicating, *inter alia*, his correct regular and overtime rates of pay, number of regular and overtime hours worked, or his correct gross pay, net pay, or deductions, during each pay period as required by NYLL § 195(3).

91.    Defendants treated and paid the Plaintiff, Midas FLSA Collective Action Plaintiffs, and Class Members in the same or similar manner.

*Defamation Claims Against Defendant Karlen*

92.    In or about July 2021, Defendant Karlen falsely stated to the corporate board members for Defendant The Herkimer Executive House, Inc. that Plaintiff illegally stole pieces of copper from equipment on The Herkimer Executive House, Inc. properties.  This statement falsely accused Plaintiff of committing a crime.

93.    Soon thereafter, and as a direct result of these statements, Defendants Midas Management and The Herkimer Executive House, Inc. terminated Plaintiff's employment on or about September 9, 2021.

94.    On or about December 2021, at an annual board meeting for Defendant The Herkimer Executive House, Inc., Defendant Karlen again falsely stated to the corporate board members for Defendant The Herkimer Executive House, Inc. and any other attendees of the annual meeting that Plaintiff illegally stole pieces of copper from equipment on The Herkimer Executive House, Inc. properties and falsely stated that Plaintiff had engaged in the use of alcohol during his employment at that location, which resulted in his termination.  These statements falsely accused Plaintiff of committing a crime and of behavior constituting moral turpitude and that is incompatible with the proper professional conduct of his trade.

95.    In or about December 2021, Defendant Karlen contacted the police to investigate the alleged stolen pieces of copper from equipment on The Herkimer Executive House, Inc. properties.  During this interaction, Defendant Karlen falsely claimed that Plaintiff illegally stole this missing copper.  These statements falsely accused Plaintiff of committing a crime and of

behavior constituting moral turpitude and that is incompatible with the proper professional conduct of his trade.

96.    As a result of these false statements, the police investigated the incident of alleged stolen pieces of copper from equipment on The Herkimer Executive House, Inc. properties.  Upon completing this investigation, the police determined that Plaintiff did not engage in the theft of these missing copper pieces or any other criminal conduct.  In particular, the police determined that the alleged theft of copper pieces required specialized technical skills and knowledge that is not possessed by lay people, such as Plaintiff, to safely complete such a theft and that he is unable to engage in such a theft.  Thus, the police cleared Plaintiff of Defendant Karlen's false allegations.

97.    Each of Defendant Karlen's statements regarding Plaintiff were false.

98.    Defendant Karlen was aware that each of his statements made were false.

99.    Defendant Karlen made each these fictitious statements with the intention to harm Plaintiff's employment and reputation.

100.    As a direct result of these false statements by Defendant Karlen, Defendants Midas Management and The Herkimer Executive House, Inc. agreed to terminate and did in fact terminate Plaintiff's employment on or about September 9, 2021.

101.    Defendant Karlen either intentionally or recklessly disregarded the truth by making statements that he knew to be false to paint a soiled image of Plaintiff that he knew at that time to be untrue and cause and his termination and harm his reputation.

102.    Defendant Karlen acted with malice by making these false statements that concern Plaintiff's employment, profession and reputation.

103.    As a direct result of Defendant Karlen' tortious conduct, Plaintiff suffered substantial lost wages, lost benefits, severe injury to his reputation, humiliation, embarrassment, and emotional pain and suffering.

## COLLECTIVE ACTION ALLEGATIONS
## AGAINST THE MIDAS DEFENDANTS

104.    At all times relevant, Plaintiff and other FLSA Collective Action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to the Midas Defendants' decisions, policies, plans and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them proper overtime compensation for hours worked in excess of forty (40) hours each week and/or failing to timely pay them their wages earned under the FLSA.

105.    Upon information and belief, there are many current and former employees who are similarly situated to the Plaintiff, who have been underpaid and harmed by such underpayments in violation of the FLSA.  The named Plaintiff is representative of those other workers and is acting on behalf of the Midas Defendants' current and former employees' interests as well as his own interest in bringing this action.

106.    Plaintiff seeks to proceed as a collective action with regard to the First through Second Claims for Relief, pursuant to 29 U.S.C. § 216(b), on behalf of himself and the following similarly situated employees:

> All non-exempt persons who are currently, or have been employed by any or all of the Midas Defendants as a superintendent, porter, cleaner, painter and/or manual laborer and/or in any other similarly-situated position, at any time during the three (3) years prior to the filing of their respective consent forms ("Midas FLSA Collective Action Plaintiffs").

107.    The First Through Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).  The FLSA Collective

Action Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Midas Defendants. These similarly situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, persons similarly situated to the Plaintiff, who have been unlawfully deprived of overtime pay and suffered untimely payment of wages in violation of the FLSA, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by the Midas Defendants.

**CLASS ACTION ALLEGATIONS**
**AGAINST THE MIDAS DEFENDANTS**

108.     Plaintiff brings his Fifth through Ninth claims on behalf of himself, individually, and a class of persons under Fed. R. Civ. P. 23 consisting of all persons who are currently, or have been, employed by any of the Midas Defendants as a superintendent, porter, cleaner, painter and/or manual laborer and/or in any other similarly-situated position at any time during the six (6) years prior to the filing of this Complaint through the date of judgment (hereinafter referred to as the "Class" or the "Class Members").

109.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of the Midas Defendants. The hours assigned and worked, the positions held, and rates of pay for each Class Member may also be determinable from the Midas Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Midas Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

110.     The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that

number rests are presently within the sole control of the Midas Defendants, upon information and belief, there are more than forty (40) individuals who are currently, or have been, employed by the Midas Defendants in a covered position or in a similarly-situated position at any time during the six (6) years prior to the filing of this Complaint.

111.    The Midas Defendants have acted and/or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

112.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)    Whether Defendants failed and/or refused to pay the Plaintiff and Class Members premium overtime compensation for hours worked in excess of forty hours in a single workweek;

(b)    Whether Defendants failed and/or refused to pay the Plaintiff and Class Members at their applicable minimum wage rates during each workweek;

(c)    Whether Defendants failed to pay Plaintiff and Class Members weekly and not later than seven calendar days after the end of the week in which the wages are earned;

(d)    Whether Defendants failed to furnish the Plaintiff and Class Members with a notice of wage rate upon their hire;

(e)    Whether Defendants failed to furnish the Plaintiff and Class Members with accurate wage notices for each pay period;

(f)    Whether Defendants' general practice of failing and/or refusing to pay Plaintiff and Class Members overtime pay and at their applicable minimum wage rates was done willfully and/or with reckless disregard of the state wage and hour laws;

(g)    Whether Defendants took any active steps to ascertain and comply with the state wage and hour laws regarding their payment of wages to Plaintiff and Class Members;

(h)    Whether Defendants failed to keep true and accurate time records for hours worked by Plaintiff and Class Members;

(i)     Whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding keeping and maintaining payroll records complied with the law; and

(j)     What was the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

113.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All of the Class Members were subject to the same corporate practices of the Midas Defendants.  Defendants failed to pay Plaintiff and the Class Members required minimum wage compensation for certain hours worked or overtime compensation under the NYLL during workweeks where they worked in excess of 40 hours.  Defendants failed to furnish Plaintiff and the Class Members with accurate wage statements in violation of NYLL § 195(3) or with wage notices at their times of hire in violation of NYLL § 195(1).  Defendants failed to pay Plaintiff and the Class Members "on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned," as required by NYLL § 191.  Additionally, Defendants' failure to timely pay wages earned caused Plaintiff and the Class Members to suffer the same or similar harms.

114.    The Midas Defendants' corporate-wide policies and practices affected all Class Members similarly, and the Midas Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.  Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

115.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

116.     Plaintiff has retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

117.     A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

118.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant savings of these costs.

119.     The members of the Class have been damaged and are entitled to recovery as a result of the Midas Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about the Midas Defendants' practices.

120.     Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class

actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

**FIRST CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)**
**(AGAINST ALL DEFENDANTS)**

121.    Plaintiff, and any Midas FLSA Collective Action Plaintiff who opts-into this action, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

122.    Defendants employed Plaintiff, any Midas FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position, for workweeks longer than forty (40) hours and willfully failed to compensate them for all of their hours worked in excess of forty (40) hours per week at a rate of at least one and one-half times the minimum wage or their regular hourly rate, whichever is greater, in violation of the FLSA.

123.    Defendants' violations of the FLSA have been willful and intentional.

124.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

125.    Due to Defendants' violations of the FLSA, Plaintiff, any Midas FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position, are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – FREQUENCY OF PAY VIOLATION)**
**(AGAINST MIDAS MANAGEMENT, MICHAEL PADERNACHT, DANIEL**
**PADERNACHT, AND NICHOLAS CASUCCI)**

126.     Plaintiff, any Midas FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

127.     Defendants Midas Management, Michael Padernacht, Daniel Padernacht, and Nicholas Casucci employed Plaintiff, any Midas FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position, yet failed to timely pay them their wages earned by paying them their wages on a monthly basis or even less frequently than monthly, in violation of the FLSA.

128.     Defendants Midas Management's, Michael Padernacht's, Daniel Padernacht's, and Nicholas Casucci's violations of the FLSA have been willful and intentional.

129.     Because Defendants Midas Management's, Michael Padernacht's, Daniel Padernacht's, and Nicholas Casucci's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

130.     As a result of Defendants Midas Management's, Michael Padernacht's, Daniel Padernacht's, and Nicholas Casucci's unlawful acts, Plaintiff, any Midas FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position are entitled to recover liquidated damages in the amount of their delayed wages, attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

33

## THIRD CLAIM FOR RELIEF
### (FAIR LABOR STANDARDS ACT – FREQUENCY OF PAY VIOLATION)
### (AGAINST MIDAS MANAGEMENT, 29-33 CONVENT AVENUE HDFC, MICHAEL PADERNACHT, CHRISTOPHER LIM, AND GERARD KARLEN)

131.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

132.    Defendants Midas Management, 29-33 Convent Avenue HDFC, Michael Padernacht, Christopher Lim, and Gerard Karlen employed Plaintiff, yet failed to pay him any wages for certain hours worked and thereby failed timely pay them their wages earned, in violation of the FLSA.

133.    Defendants Midas Management's, 29-33 Convent Avenue HDFC's, Michael Padernacht's, Christopher Lim's, and Gerard Karlen's violations of the FLSA have been willful and intentional.

134.    Because Defendants Midas Management's, 29-33 Convent Avenue HDFC's, Michael Padernacht's, Christopher Lim's, and Gerard Karlen's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

135.    As a result of Defendants Midas Management's, 29-33 Convent Avenue HDFC's, Michael Padernacht's, Christopher Lim's, and Gerard Karlen's unlawful acts, Plaintiff is entitled to recover liquidated damages in the amount of their delayed wages, attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

## FOURTH CLAIM FOR RELIEF
### (FAIR LABOR STANDARDS ACT – MINIMUM WAGES)
### (AGAINST MIDAS MANAGEMENT, THE HERKIMER EXECUTIVE HOUSE, INC., MICHAEL PADERNACHT AND GERARD KARLEN)

136.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

137.    Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen employed Plaintiff, yet willfully failed to pay Plaintiff the applicable minimum wage rate for hours worked during certain workweeks, in violation of the FLSA.

138.    Defendants Midas Management's, The Herkimer Executive House, Inc.'s, Michael Padernacht's and Gerard Karlen's violations of the FLSA have been willful and intentional.

139.    Because Defendants Midas Management's, The Herkimer Executive House, Inc.'s, Michael Padernacht's and Gerard Karlen's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

140.    Due to Defendants Midas Management's, The Herkimer Executive House, Inc.'s, Michael Padernacht's and Gerard Karlen's violations of the FLSA, Plaintiff is entitled to recover from Defendants unpaid minimum wage compensation, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

### FIFTH CLAIM FOR RELIEF
### (NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)
### (AGAINST ALL DEFENDANTS)

141.    Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

142.    Defendants employed Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, for workweeks longer than forty (40) hours and failed to compensate the Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, for hours worked in excess of forty (40) hours per week, at a rate of at least

one and one-half times the minimum wage or their regular hourly rate, whichever is greater, in violation of NYLL.

143.    By Defendants' failure to pay Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, overtime wages for hours worked in excess of 40 hours per week, Defendants violated the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

144.    Defendants' violations of the NYLL have been willful and intentional.

145.    Due to Defendants' violations of the NYLL, Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, are entitled to recover from Defendants unpaid overtime wages, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**SIXTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – MINIMUM WAGES)**
**(AGAINST ALL DEFENDANTS, EXCEPT NICHOLAS CASUCCI)**

146.    Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

147.    Defendants (except Defendant Nicholas Casucci) employed Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, and willfully failed to pay Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, the applicable minimum wage rates for hours worked during certain workweeks, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

148.    These Defendants' violations of the NYLL have been willful and intentional.

149.    Due to these Defendants' violations of the NYLL, Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, are entitled to recover from Defendants (except Defendant Nicholas Casucci) unpaid minimum wage compensation, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**SEVENTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(1))**
**(AGAINST ALL DEFENDANTS)**

150.    Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

151.    Defendants failed to provide Plaintiff, Class Members, and any Midas FLSA Collective Action Plaintiff who opts-into this action, with a written notice upon their hire regarding, *inter alia*, their rate of pay, the basis of their rate of pay, the employee's regular pay day, the name, address and telephone number of the employer, and other information required by NYLL § 195(1).

152.    Due to Defendants' failure to provide Plaintiff, Class Members, and any Midas FLSA Collective Action Plaintiff who opts-into this action, with the notice required by NYLL § 195(1), Plaintiff, Class Members, and any Midas FLSA Collective Action Plaintiff who opts-into this action, are entitled to statutory damages, attorneys' fees and costs of this action.

**EIGHTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(3))**
**(AGAINST ALL DEFENDANTS)**

153.    Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

154.    Defendants failed to provide Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts-into this action, with accurate statements of their wages earned, including, *inter alia*, their correct regular and overtime rates of pay, number of regular and overtime hours worked, or correct gross pay, net pay, or deductions, each pay period as required by NYLL § 195(3).

155.    Due to Defendants' failure to provide Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts-into this action, with accurate wage statements as required by NYLL § 195(3), Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts-into this action, are entitled to statutory damages, attorneys' fees and costs of this action.

**NINTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 191)**
**(AGAINST MIDAS MANAGEMENT, MICHAEL PADERNACHT,**
**DANIEL PADERNACHT, AND NICHOLAS CASUCCI)**

156.    Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

157.    Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, were manual workers as defined by the NYLL.

158.    Defendants Midas Management, Michael Padernacht, Daniel Padernacht, and Nicholas Casucci were required to pay the Plaintiff, Class Members and any Midas FLSA Collective Action Plaintiff who opts into this action, their compensation on a weekly basis, and not later than seven calendar days after the end of the week in which the wages were earned.

159.    Defendants Midas Management, Michael Padernacht, Daniel Padernacht, and Nicholas Casucci failed to pay Plaintiff, certain Class Members and certain Midas FLSA

Collective Action Plaintiffs who opt into this action, their wages earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191.

160.    Defendants Midas Management's, Michael Padernacht's, Daniel Padernacht's, and Nicholas Casucci's violations of the NYLL have been willful and intentional.

161.    Due to Defendants Midas Management's, Michael Padernacht's, Daniel Padernacht's, and Nicholas Casucci's violations of the NYLL, Plaintiff, impacted Class Members and any impacted Midas FLSA Collective Action Plaintiff who opts into this action, are entitled to statutory damages equal to the total amount of the delayed wages, attorneys' fees and costs of this action.

**TENTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 191)**
**(AGAINST MIDAS MANAGEMENT, THE HERKIMER EXECUTIVE**
**HOUSE, INC., 29-33 CONVENT AVENUE HDFC, MICHAEL PADERNACHT,**
**CHRISTOPHER LIM, AND GERARD KARLEN)**

162.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

163.    Plaintiff was a manual worker as defined by the NYLL.

164.    Defendants Midas Management, The Herkimer Executive House, Inc., 29-33 Convent Avenue HDFC, Michael Padernacht, Christopher Lim, and Gerard Karlen were required to pay the Plaintiff his compensation on a weekly basis, and not later than seven calendar days after the end of the week in which the wages were earned.

165.    Defendants Midas Management, The Herkimer Executive House, Inc., 29-33 Convent Avenue HDFC, Michael Padernacht, Christopher Lim, and Gerard Karlen failed to pay Plaintiff for many hours worked at any rate of pay and therefore failed to pay Plaintiff his wages

earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191.

166.    Defendants Midas Management's, The Herkimer Executive House, Inc.'s, 29-33 Convent Avenue HDFC's, Michael Padernacht's, Christopher Lim's, and Gerard Karlen's violations of the NYLL have been willful and intentional.

167.    Due to Defendants Midas Management's, The Herkimer Executive House, Inc.'s, 29-33 Convent Avenue HDFC's, Michael Padernacht's, Christopher Lim's, and Gerard Karlen's violations of the NYLL, Plaintiff is entitled to statutory damages equal to the total amount of the delayed wages, attorneys' fees and costs of this action.

### ELEVENTH CLAIM FOR RELIEF
### (FAILURE TO PAY WAGES EARNED – NEW YORK LABOR LAW)
### (AGAINST MIDAS MANAGEMENT, THE HERKIMER EXECUTIVE
### HOUSE, INC., 29-33 CONVENT AVENUE HDFC, MICHAEL PADERNACHT,
### CHRISTOPHER LIM, AND GERARD KARLEN)

168.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

169.    NYLL §§ 190, 191, 198 and 663(1) require that employers pay wages to their employees in accordance with their agreed terms of employment.

170.    Defendants Midas Management, The Herkimer Executive House, Inc., 29-33 Convent Avenue HDFC, Michael Padernacht, Christopher Lim, and Gerard Karlen failed to compensate Plaintiff at his regular rate of pay for certain hours that he worked in accordance with his agreed terms of employment.

171.    Defendants Midas Management's, The Herkimer Executive House, Inc.'s, 29-33 Convent Avenue HDFC's, Michael Padernacht's, Christopher Lim's, and Gerard Karlen's violations of the NYLL have been willful and intentional.

172.     Plaintiff is entitled to recover his unpaid wages for all hours worked for Defendants Midas Management, The Herkimer Executive House, Inc., 29-33 Convent Avenue HDFC, Michael Padernacht, Christopher Lim, and Gerard Karlen but for which those Defendants did not provide compensation at his regular rate of pay.

173.     Plaintiff is also entitled to liquidated damages, attorneys' fees, costs, and interest for Defendants Midas Management's, The Herkimer Executive House, Inc.'s, 29-33 Convent Avenue HDFC's, Michael Padernacht's, Christopher Lim's, and Gerard Karlen's failure to pay wages in accordance with his agreed terms of employment.

**TWELFTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 193)**
**(AGAINST MIDAS MANAGEMENT, THE HERKIMER EXECUTIVE**
**HOUSE, INC., MICHAEL PADERNACHT AND GERARD KARLEN)**

174.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

175.     NYLL § 193 prohibits employers from taking any deductions from wages, except as required by law or regulation, or authorized by the employee for the employee's benefit.

176.     Throughout his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen required Plaintiff to use a cell phone as part of his employment and to perform his work duties, and, therefore, this expense constitutes a business expense to be borne by those Defendants.

177.     Throughout his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen required Plaintiff to pay for the use of a cell phone from his own funds.  Throughout his employment, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen did not reimburse

Plaintiff for these expenditures or pay him the $100.00 monthly payment to be promised as a term of his employment intended to pay for these expenses.

178.    Thus, Defendants Midas Management, The Herkimer Executive House, Inc., Michael Padernacht and Gerard Karlen commonly made deductions to Plaintiff's wages, solely for the benefit of those Defendants, in violation of NYLL § 193 and the supporting New York State Department of Labor Regulations.

179.    Defendants Midas Management's, The Herkimer Executive House, Inc.'s, Michael Padernacht's and Gerard Karlen's violations of the NYLL have been willful and intentional.

180.    Due to Defendants Midas Management's, The Herkimer Executive House, Inc.'s, Michael Padernacht's and Gerard Karlen's violations of the NYLL, Plaintiff is entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**THIRTEENTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**
**(AGAINST MIDAS MANAGEMENT, THE HERKIMER EXECUTIVE**
**HOUSE, INC., AND  29-33 CONVENT AVENUE HDFC)**

181.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

182.    Plaintiff performed work for the benefit of Defendants Midas Management, The Herkimer Executive House, Inc., and 29-33 Convent Avenue HDFC, at those Defendants' behest. However, Defendants Midas Management, The Herkimer Executive House, Inc., and 29-33 Convent Avenue HDFC failed to compensate Plaintiff at his regular rate of pay or at any rate of pay for certain hours that he worked in accordance with his agreed terms of employment.  By doing so, Defendants Midas Management, The Herkimer Executive House, Inc., and 29-33 Convent

Avenue HDFC retained monies that they were required to pay to Plaintiff for work that he performed for those Defendants.

183.    Due to Defendants Midas Management's, The Herkimer Executive House, Inc.'s, and 29-33 Convent Avenue HDFC's  conduct in violation of New York common law, those Defendants were enriched at the expense of Plaintiff, and it is against equity and good conscience to permit those Defendants to retain what is sought to be recovered.

184.    As a direct and proximate result of Defendant Defendants Midas Management's, The Herkimer Executive House, Inc.'s, and 29-33 Convent Avenue HDFC's unlawful conduct, as set forth herein, Plaintiff has sustained and is entitled to recover damages, costs of this action, and interest as permitted by law.

**FOURTEENTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**
**(AGAINST MIDAS MANAGEMENT AND THE HERKIMER**
**EXECUTIVE HOUSE, INC.)**

185.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

186.    Plaintiff performed work for the benefit of Defendants Midas Management and The Herkimer Executive House, Inc., at those Defendants' behest.  As a condition of his employment, Defendants Midas Management and The Herkimer Executive House, Inc. offered as a term of employment for, and thereby promised to pay, Plaintiff an additional $100.00 per month to pay the monthly costs for a cell phone.  Throughout his employment, Defendants Midas Management and The Herkimer Executive House, Inc. required Plaintiff to use a cell phone as part of his employment and to perform his work duties, and, therefore, this expense constitutes a business expense to be borne by those Defendants.  Throughout his employment, Defendants Midas Defendants and the Herkimer Executive House, Inc. required Plaintiff to pay for the use of a cell

phone from his own funds.  Throughout his employment, Defendants Midas Management and The Herkimer Executive House, Inc. did not reimburse Plaintiff for these expenditures or pay him the $100.00 monthly payment to be promised as a term of his employment intended to pay for these expenses. Thus, Defendants Midas Management and The Herkimer Executive House, Inc. shifted a clear business expense that must fall on Defendants onto their employees.

187.    Due to Defendants Midas Management's and The Herkimer Executive House, Inc.'s conduct in violation of New York common law, those Defendants were enriched at the expense of Plaintiff and it is against equity and good conscience to permit those Defendants to retain what is sought to be recovered.

188.    As a direct and proximate result of Defendants Midas Defendants' and the Herkimer Executive House, Inc.'s unlawful conduct, as set forth herein, Plaintiff has sustained and is entitled to recover damages, costs of this action, and interest as permitted by law.

**FIFTEENTH CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**
**(AGAINST MIDAS MANAGEMENT AND THE HERKIMER**
**EXECUTIVE HOUSE, INC.)**

189.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

190.    As a condition of his employment, Defendants Midas Management and The Herkimer Executive House, Inc. offered as a term of employment for, and thereby promised to pay, Plaintiff an additional $100.00 per month to pay the monthly costs for a cell phone.  Plaintiff accepted this offer and entered into this binding contract.

191.    Throughout his employment, Plaintiff performed work for the benefit of Defendants Midas Management and The Herkimer Executive House, Inc., at those Defendants' behest, pursuant to this contract.  Throughout his employment, Defendants Midas Management

and The Herkimer Executive House, Inc. required Plaintiff to use a cell phone as part of his employment and to perform his work duties, and, therefore, this expense constitutes a business expense to be borne by those Defendants.  Throughout his employment, Defendants Midas Defendants and the Herkimer Executive House, Inc. required Plaintiff to pay for the use of a cell phone from his own funds.

192.    Throughout his employment, Defendants Midas Management and The Herkimer Executive House, Inc. did not pay him the $100.00 monthly payment to be promised as a term of his employment and the parties' contract that was intended to pay for these expenses.

193.    The employment agreement referenced above is a valid enforceable contract.

194.    Plaintiff has at all times complied with his obligations under the employment agreement.

195.    Defendants Midas Management and The Herkimer Executive House, Inc. have breached the employment agreement by failing to pay Plaintiff the $100.00 monthly payment promised to him as a term of his employment and the parties' contract to the detriment of the Plaintiff.

196.    As a direct and proximate result of Defendants Midas Management's and The Herkimer Executive House, Inc.'s unlawful conduct, as set forth herein, Plaintiff has sustained and is entitled to recover damages, costs of this action, and interest as permitted by law.

**SIXTEENTH CLAIM FOR RELIEF**
**(QUANTUM MERUIT)**
**(AGAINST MIDAS MANAGEMENT, THE HERKIMER EXECUTIVE**
**HOUSE, INC., AND 29-33 CONVENT AVENUE HDFC)**

197.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

198.    Plaintiff performed valuable services for Defendants Midas Management, The Herkimer Executive House, Inc., and 29-33 Convent Avenue HDFC in good faith, at Defendants' behest, which were accepted by Defendants.

199.    Plaintiff performed valuable services for Defendants Midas Management, The Herkimer Executive House, Inc., and 29-33 Convent Avenue HDFC with the expectation that he would be compensated for his work.

200.    Defendants Midas Management, The Herkimer Executive House, Inc., and 29-33 Convent Avenue HDFC failed to compensate Plaintiff at his regular rate of pay or any rate of pay for certain hours that he worked for those Defendants.

201.    Plaintiff is entitled to the recovery of the reasonable value of the services that he provided to Defendants Midas Management, The Herkimer Executive House, Inc., and 29-33 Convent Avenue HDFC, those Defendants were enriched at the expense of Plaintiff and it is against equity and good conscience to permit those Defendants to retain what is sought to be recovered.

202.    As a direct and proximate result of Defendants Midas Management's, The Herkimer Executive House, Inc.'s, and 29-33 Convent Avenue HDFC's unlawful conduct, as set forth herein, Plaintiff has sustained and is entitled to recover damages, costs of this action, and interest as permitted by law.

## SEVENTEENTH CLAIM FOR RELIEF
### (SLANDER PER SE)
### (AGAINST DEFENDANT KARLEN)

203.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

204.    As described above, Defendant Karlen at least negligently and/or intentionally

made the aforementioned falsestatements of fact about Plaintiff to his employers and third-parties, accusing Plaintiff of a serious crime and of improper behavior in a manner that injured him in his trade and profession.

205.    Defendant Karlen made these slanderous, defamatory and false statements because of his desire to injure Plaintiff.

206.    Defendant, in making such statements, at least negligently and/or intentionally engaged in conduct that sought to and succeeded in causing harm to Plaintiff in his employment, including the termination of his employment by Defendants Midas Management and The Herkimer Executive House, Inc.

207.    Defendant repeatedly made these statements at least negligently, in that he knew that they were false when he made them or showed a reckless and/or negligent disregard for their truth, or did so intentionally.

208.    The aforementioned statements were not privileged or authorized statements.

209.    Plaintiff is neither a public figure nor public official.

210.    The false information concerns Plaintiff's trade and/or profession.

211.    Defendant engaged in gross, wanton, willful and/or other morally culpable conduct that entitles Plaintiff to punitive damages.

212.    As a direct and proximate result of the foregoing, Plaintiff suffered lost income and benefits, humiliation, embarrassment, emotional pain and suffering, and severe damage to his reputation.

213.    As a direct and proximate result of Defendant Karlen's unlawful conduct, as set forth herein, Plaintiff has sustained and is entitled to recover damages, lost wages, benefits,

compensatory damages for emotional pain and suffering, costs of this action, and interest as permitted by law.

## EIGHTEENTH CLAIM FOR RELIEF
### (SLANDER PER QUOD)
### (AGAINST DEFENDANT KARLEN)

214.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

215.    As described above, Defendant Karlen at least negligently and/or intentionally made the aforementioned false statements of fact about Plaintiff to several employers and third-parties.

216.    Defendant Karlen's conduct caused him monetary losses in the form of lost past and future wages, lost benefits, and out-of-pocket expenses.

217.    Defendant Karlen made these slanderous, defamatory and false statements because of his desire to injure Plaintiff.

218.    Defendant Karlen, in making such statements, at least negligently and/or intentionally engaged in conduct that sought to and succeeded in causing harm to Plaintiff in his employment, including the termination of his employment by Defendants Midas Management and The Herkimer Executive House, Inc..

219.    Defendant Karlen repeatedly made these statements at least negligently, in that he knew that they were false when he made them or showed a reckless and/or negligent disregard for their truth, or did so intentionally.

220.    The aforementioned statements were not privileged or authorized statements.

221.    Plaintiff is neither a public figure nor public official.

222.    Defendant Karlen engaged in gross, wanton, willful and/or other morally culpable

conduct that entitles Plaintiff to punitive damages.

223.    As a direct proximate result of the foregoing, Plaintiff suffered actual monetary and general damages, including lost income and benefits, as well as suffering humiliation, embarrassment, emotional pain and suffering, severe damage to his reputation, and special damages and/or harm.

224.    As a direct and proximate result of Defendant Karlen's unlawful conduct, as set forth herein, Plaintiff has sustained and is entitled to recover damages, general damages, special damages, lost wages, lost benefits, compensatory damages for emotional pain and suffering, costs of this action, and interest as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Class Members, and Midas FLSA Collective Action Plaintiffs pray for the following relief:

i.    An order restraining Defendants from any retaliation against Plaintiff, Class Members, and Midas FLSA Collective Action Plaintiffs for participation in any form in this litigation;

ii.    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act, and its supporting regulations, and the New York Labor Law, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor regulations;

iii.    Designation of this action as an FLSA collective action on behalf of the Plaintiff and Midas FLSA Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the Midas FLSA Collective Action Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely

FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

iv.   Certifying this action a class action pursuant to Fed. R. Civ. P. 23;

v.    Unpaid wages, including overtime and minimum wages, and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

vi.   Unpaid wages, including but not limited to unpaid overtime compensation, minimum wages, and wages owed at their agreed upon rates of pay, and an additional and equal amount as liquidated damages, pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

vii.  Liquidated damages for untimely paid wages under the FLSA;

viii. Damages pursuant to NYLL § 191;

ix.   Damages pursuant to NYLL § 193;

x.    Damages pursuant to NYLL § 195(1), (3);

xi.   Awarding damages for violation of New York common law with respect to Plaintiff's claims for unjust enrichment, quantum meruit and breach of contract;

xii.  With respect to Defendant Karlen, awarding economic and compensatory damages for lost wages, lost benefits, humiliation, embarrassment, emotional pain and suffering, out of pocket expenses, special damages, and all other damages owed to Plaintiff in an amount proven at trial, resulting from Defendant Karlen's tortious conduct for slander *per se* and/or slander *per quod*;

xiii. With respect to Defendant Karlen, awarding punitive damages in an amount commensurate with Defendant Karlen's ability to pay and so as to deter future

malicious, reckless, and/or intentional acts where appropriate and permitted by law;

xiv.     All attorneys' fees incurred in prosecuting these claims;

xv.     All costs incurred in prosecuting these claims;

xvi.     Pre- and post-judgment interest as permitted by law; and

xvii.     Awarding such other and further legal and equitable relief as may be found
appropriate and as this Court may deem just and proper.

Dated: Hauppauge, New York
       March 2, 2022

                                LAW OFFICE OF PETER A. ROMERO PLLC
                                *Attorneys for Plaintiff*
                                490 Wheeler Road, Suite 250
                                Hauppauge, New York 11788
                                Tel.: (631) 257-5588

By: _____
                                DAVID D. BARNHORN, ESQ.
                                PETER A. ROMERO, ESQ.