LAW OFFICE OF
**PETER A. ROMERO**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

February 8, 2023

<u>VIA ECF</u>
Hon. Mary Kay Vyskocil
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *Daniel Zerafa v. Midas Property Management Corp., et al.*
      <u>Docket No.: 22-cv-01755 (MKV)</u>

Dear Judge Vyskocil:

  This firm represents Plaintiff Daniel Zerafa, who brought the above-referenced matter against Defendants Midas Property Management Corp., Midas Management Assoc. Inc., Michael Padernacht, Daniel Padernacht, Christopher Lim, Gerard Karlen, and Nicholas Casucci (collectively as "Midas Defendants"), The Herkimer Executive House, Inc. ("Herkimer") and 29-33 Convent Avenue Housing Development Fund Corporation incorrectly sued herein as 29-33 Convent Avenue HDFC. Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), for failure to pay the minimum wage rate under the FLSA and NYLL, failure to pay agreed upon rates of pay under the NYLL, for failure to issue timely payment of wages pursuant to the FLSA and NYLL § 191, failure to furnish a wage notice upon his hire under NYLL § 195(1), failure to provide accurate wage statements for each pay period under NYLL § 195(3), for unlawful deductions from wages pursuant to NYLL § 193, and for unjust enrichment, quantum meruit and breach of contract under New York common law.[1] D.E. 40. The parties have reached a resolution of this action. Accordingly, Plaintiff now submits this motion for approval, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiff's FLSA claims.[2] The parties' proposed Settlement Agreement and Release of Claims (the "Agreement") is attached as Exhibit A.

---

[1] Plaintiff also brings claims against Defendant Karlen for violations of the New York common law in the form of slander *per se* and slander *per quod* and, against Defendant Lim for violations of the New York common law in the form of libel *per se*. These claims were dismissed without prejudice. D.E. 56.

[2] The parties do not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of Plaintiff's NYLL and remaining New York common law claims asserted in this lawsuit.

**Procedural History**

On March 3, 2022, Plaintiff filed his Complaint against Defendants. D.E. 1. On June 3, 2022, Defendant Herkimer served its request for a pre-motion conference in anticipation of its motion to dismiss Plaintiff's Complaint. D.E. 26. On June 6, 2022, the Midas Defendants served their request for a pre-motion conference in anticipation of their motion to dismiss Plaintiff's Complaint. D.E. 30. On July 6, 2022, Defendant Convent served its request for a pre-motion conference in anticipation of its motion to dismiss Plaintiff's Complaint. D.E. 36. Plaintiff separately opposed Defendants' three requests for pre-motion conferences. D.E. 31, 34, 37. Pursuant to the Court's order, D.E. 38, on July 26, 2022, Plaintiff filed his Amended Complaint. D.E. 40. On October 17, 2022, the parties engaged in private mediation before Mediator Giulio Zanolla, Esq., a well-respected mediator with extensive experience conducting mediations of individual, collective, and class action wage and hour litigations. Guided by Mediator Zanolla, the parties engaged in full-day, contentious mediation – which involved extensive negotiation with respect to the hotly-contested issues in this litigation – and that ultimately resulted in the parties executing a terms sheet memorializing their settlement in principle. The parties thereafter negotiated their formal Agreement.

The settlement agreement between the Plaintiff and the Defendants provides for payment of a gross sum of $95,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive a total of $58,735.17 and Plaintiff's counsel will receive a total sum of $36,264.83, consisting of $29,367.58 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $6,897.25 for litigation costs.

Additionally, Defendant Herkimer is releasing Plaintiff from alleged unpaid rental payments, which stems from Plaintiff continuing to live in an on-site apartment after his employment ended, that Defendant Herkimer has valued in excess of $20,000.00. Plaintiff's counsel is not seeking any attorneys' fees with respect to this additional financial benefit to the Plaintiff. Therefore, Plaintiff is effectively receiving a benefit from this settlement in excess of $78,000, even after deducting for attorneys' fees and costs relating to the wage and hour settlement.

**The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable

the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Plaintiff contends that he worked as a superintendent and laborer for Defendants in many buildings from on or about August 17, 2017 through on or about September 9, 2021. Plaintiff asserts that he was responsible for performing various tasks, including but not limited to remodeling apartments, painting, plastering, recycling and garbage removal, snow removal, sweeping, cleaning, deep cleaning during the Covid-19 pandemic, boiler repairs, repairs for plumbing or sewer leaks, routine repairs, emergency repairs, and other services as needed. Throughout his employment, Plaintiff alleges that he regularly worked more than forty hours during each workweek, commonly working seven days per week. For this work, Plaintiff asserts that Defendants paid him a variety of forms of pay depending on worksite, including a regular hourly rate of pay for his first forty hours or work, a fixed weekly salary or a fixed monthly salary, regardless of the number of hours worked. As a result, despite frequently working in excess of forty hours in a workweek, Plaintiff alleges that Defendants failed to pay him at his statutorily-mandated overtime rate of pay of one and one-half times his applicable regular rate of pay. Plaintiff also asserts that, at times, certain Defendants failed to pay him at the mandated minimum wage rate under the FLSA, including alleging that certain Defendants required him to engage in uncompensated work during certain periods. By paying him monthly for some of his work, Plaintiff also contends that the Midas Defendants failed to timely pay him wages earned under the FLSA, which courts have ruled should be paid within two weeks.

Critically, the parties have a litany of key disputes that impact liability and damages. As a threshold issue, Defendants' statuses as employers are vigorously disputed. Plaintiff argues that the Midas Defendants, Herkimer and Convent each directly employed Plaintiff. Additionally, Plaintiff argues that the Midas Defendants were joint employers with each building where Plaintiff performed work, including with Herkimer and Convent, for the work performed at those worksites and that Defendants are jointly and severally liable for any violations that either allegedly committed while at each worksite. Herkimer, Convent, and the individual Defendants deny that they were Plaintiff's employers or joint employers, which Plaintiff disputes. As such, Plaintiff would be required to convince a trier of fact that each Defendant was his direct employer or his joint employer with the Midas corporations under the FLSA in order to receive the maximum potential recovery under the FLSA. The outcome of these disputes directly impact whether Plaintiff is able to establish liability as Plaintiff must also prove that Defendants were his employers as an element of his claims. If Defendants succeeded in these defenses – that all or some of the corporate Defendants and the individual Defendants were not Plaintiff's employers, those Defendants would not owe Plaintiff any compensation. If a trier of fact could not determine by a preponderance of the evidence which corporate Defendants or individual Defendants were Plaintiff's employers, Plaintiff would not be entitled to receive any recovery whatsoever.

If Plaintiff were successful at establishing that Defendants were his employers, numerous additional disputes arise. Among these disputes, Defendants contest the number of hours worked by Plaintiff each week, asserting that Plaintiff worked far fewer hours each week than alleged. Certain Defendants contend that Plaintiff never worked in excess of forty

hours for them and therefore would not be entitled to overtime compensation, if their position were accepted by a trier of fact. Defendants also deny that he engaged in any uncompensated work or work at less than the applicable minimum wage under the FLSA. The resolution of these disputes substantially impact the assessment of Plaintiff's alleged damages. Defendants also contest that Plaintiff is entitled to damages for the untimely payment of wages under the FLSA. While this claim has been recognized in decisions by several judges, and Plaintiff contends that those cases support his claim, the precise duration of the delay required to give rise to a claim for untimely payment of FLSA wages is likely not yet considered deeply-rooted, well-settled law. Further, Defendants contend that Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Moreover, Defendant Herkimer has expressed its intention to commence a separate landlord-tenant dispute against Plaintiff. Defendant Herkimer asserts that Plaintiff improperly failed to vacate his on-site apartment for a period of time after his employment with Defendants ended and, as a result, Defendants claim that Plaintiff owes Defendants outstanding rental payments for that apartment that they allege exceed $20,000.00. If filed, Plaintiff would seek to defend against that holdover proceeding in a New York state forum. Here, Plaintiff disputes any contention that this sum is a setoff against his claimed FLSA damages. However, this sum might be deemed a setoff against his alleged NYLL damages and, crucially, this sum could result in a judgment against Plaintiff in the separate forum. As part of their agreement, and in order for the parties to part ways without further disputes, Defendant Herkimer has agreed to release Plaintiff from any liability for any outstanding rental payments that are alleged to be due. Because of this, Plaintiff is obtaining the additional benefit of more than $20,000 through this release.

Additionally, while only collaterally related to his FLSA claims, Defendants contend that Plaintiff was exempt under the residential janitor exemption of the NYLL as he was employed as a superintendent, which is an exemption that does not exist under the FLSA. Plaintiff disputes that he is covered by this exemption. However, this defense, if proven, could impact Plaintiff's recovery under the FLSA. Specifically, assuming this NYLL exemption does not apply, the NYLL provides for a greater minimum wage and overtime rate than the FLSA. The FLSA typically would adopt this greater rate of pay for purposes of assessing Plaintiff's FLSA overtime damages if the NYLL claim were successful. As a result, the determination regarding whether Plaintiff is exempt under the NYLL could impact the value of his damages under the FLSA. Moreover, Plaintiff anticipates that Defendants would argue that Plaintiff is not entitled to liquidated damages on the basis that Defendants relied on the NYLL residential janitor exemption as a good faith basis not to pay overtime compensation. While Plaintiff vehemently disagrees with this argument, it could eliminate Plaintiff's entitlement to liquidated damages under the FLSA if the argument is credited by the trier of fact.

Plaintiff calculated his damages in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recoveries against the Midas Defendants under the FLSA at trial amount to $115,556.97 for unpaid FLSA overtime and minimum wages and $115,556.97 for FLSA liquidated damages relating to those unpaid wages, and $26,965.38 for

liquidated damages relating to Midas Defendants' failure to timely pay his FLSA wages.[3] Plaintiff's damages alleged against Herkimer and Convent are included in these damages owed by the Midas Defendants. However, for context, making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recoveries: (1) against: Herkimer under the FLSA at trial amount to $33,262.50 for unpaid FLSA overtime and minimum wages and $33,262.50 for FLSA liquidated damages relating to those unpaid wages; and (2) against Convent under the FLSA at trial amount to $12,204.86 for unpaid FLSA overtime and minimum wages and $12,204.86 for FLSA liquidated damages relating to those unpaid wages. By comparison, Defendants contend that Plaintiff is not owed <u>any</u> unpaid FLSA wages or any FLSA liquidated damages.

      Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in litigating Defendants' motions to dismiss the Amended Complaint, formal discovery, depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential partial motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiff, even if he is successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn almost entirely upon the credibility of the parties. Plaintiff's recollection of his hours worked and any testimony offered by Defendants in an attempt to undermine his claims will necessarily require the trier of fact to assess the credibility of the respective parties and witnesses. Similarly, the determination regarding whether each Defendant constitutes an employer or joint employer under the FLSA will require the trier of fact to resolve the credibility of the witnesses and weigh those results within the complicated legal concepts governing joint employer or employer status. As such, the outcome of this trial is unusually difficult to predict as Plaintiff faces significant challenges to establish liability against Defendants and the amount of his damages claimed. Moreover, while primarily a concern under the NYLL, Plaintiff faces a significant risk at trial that he is exempt under the NYLL (though Plaintiff disputes the applicability of this exemption), which, as discussed above, could then reduce the valuation of his damages under the FLSA. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiff were successful on his FLSA overtime wage and minimum wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half. If Defendants could establish that the alleged violations were not willful, Plaintiff's FLSA claims would be subject to a two-year statute of limitations, which would further reduce his unpaid FLSA damages to $66,316.06 for unpaid FLSA overtime and minimum wages and $17,284.62 for liquidated damages relating to the Midas Defendants' failure to timely pay his FLSA wages, or $20,043.75 for unpaid FLSA overtime and minimum wages against Herkimer and $6,390.86 for unpaid FLSA overtime and minimum wages against Convent. Moreover, as noted, in light of Defendants' defenses, there is a risk that Plaintiff could ultimately receive nothing at all under the FLSA with respect to his claims against certain Defendants or even against all Defendants. Thus, by settling at this stage, Plaintiff ensures that he will receive a

---

[3] Plaintiff assessed his liquidated damages owed for Defendants' failure to timely pay his FLSA wages based only on the amount of the late paid wages covered by a monthly fixed salary. Liquidated damages for the failure to pay overtime or minimum wage compensation under the FLSA are separately assessed with respect to those claims where the underlying payment of wages is still outstanding. Thus, Plaintiff's claim for liquidated damages for Defendants' frequency of pay violations are not duplicative.

recovery in this matter. Indeed, under the terms of the settlement, Plaintiff will receive nearly all of his alleged unpaid FLSA wages within the two-year statutory period and a substantial portion of his alleged unpaid FLSA wages within the three-year statutory period, even after deducting for attorneys' fees and litigation costs. If the Court considers the value of Defendants' release of claimed damages for the outstanding rental payments alleged by Herkimer, which would be pursued in a separate landlord-tenant dispute, Plaintiff is receiving more than the full amount of his claimed unpaid FLSA wages within the two-year statutory period, even after deducting for attorneys' fees and litigation costs. Lastly, Defendants assert that they have modest financial resources and cannot afford a larger settlement or judgment. As a result, even if Plaintiff were successful at trial, there is a risk that Plaintiff would be able to collect only a small portion of the judgment or possibly be unable to collect any recovery under the judgment due to Defendants' limited financial resources.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that he could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. In this matter, parties have entered into release agreements based on the circumstances of each Defendant. Plaintiff has entered into a limited wage and hour release with the Midas Defendants. Plaintiff and Herkimer and Convent have entered into a mutual general release of claims to ensure finality of the disputes between the parties. Courts in this Circuit have repeatedly permitted a mutual general release in individual wage and hour cases like the parties' settlement agreement, with experienced counsel, and where the Court can be assured that the rights of the plaintiffs are sufficiently protected. See Zai You Zhu v. Meo Japanese Grill & Sushi, Inc., 2021 U.S. Dist. LEXIS 193605, at *11-12 (E.D.N.Y. Oct. 6, 2021); Rosario v. Structural Preservation Systems, LLC, 2019 WL 1383642, at * 3 (S.D.N.Y. Mar. 27, 2019) ("general releases may be permitted where the plaintiffs are no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual"); Khan v. Young Adult Institute, Inc., 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("Broad general releases of non-FLSA claims are acceptable where the release of claims is binding on both plaintiffs and defendants because the mutuality cures the "concern[ ] that the waiver unfairly benefits only Defendants.") (quoting Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016); Snead v. Interim HealthCare of Rochester, Inc., 286 F.Supp.3d 546, 556 (W.D.N.Y. 2018) ("In the instant matter, Plaintiff is no longer an employee of Defendant, and the release at issue is mutual...Furthermore, because this case is not a class action, at least one of the dangers posed by an overbroad release — that it would bind class members who had no bargaining power concerning the settlement terms — is not present here...Therefore, under the circumstances of this case, the Court finds that the mutual waiver and release provisions are a fair and reasonable outcome of balanced negotiations, occurring over several months, which will bring closure to both sides.); Burgos v. Northeast Logistics, Inc., 2018 WL 2376481, at * (E.D.N.Y. Apr. 26, 2018) (holding that approval of a mutual general release in the non-class-action context is permissible, where the plaintiff is no longer employed by the defendant, and where the release includes "reciprocity of parties" (i.e., where the array of persons covered by the waiver was symmetrical)); Weidong Li v. Ichiban Mei Rong Li Inc., 2017 WL

1750374, (N.D.N.Y. May 5, 2017) (concluding mutual general release, where employment relationship was already terminated, reflected the parties' "obvious desire [ ] to end their relationship without the specter of further disputes. Such an intention is entirely consistent with the goal under the FLSA of achieving a fair and just resolution."); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure" and noting a mutual general release, like the one negotiated between Plaintiffs and Defendant, "will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes."); Chauca v. Abitino's Pizza 49th Street Corp., 2016 WL 2647603, at *1-2 (S.D.N.Y. June 29, 2016) (approving mutual general release in FLSA settlement); Weng v. T&W Restaurant, Inc., 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving mutual general release in FLSA settlement, but denying approval of agreement for other reasons); Cionca v. Interactive Realty, LLC, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (same); Lopez v. Poko-St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (citing Souza v. 65 St. Marks Bistro, 2015 WL 727174 7, at *5 (S.D.N. Y. Nov. 6, 2015); and Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)) (denying settlement due to, *inter alia,* the general release being overly broad and not mutual, but holding that the release would be approved if revised to be mutual)); Lola, 2016 WL 922223, at *2 (quoting Souza, 2015 WL 7271747, at *5) (approving settlement agreement with mutual releases and noting "mutual release of claims is acceptable because it 'will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes.'"). Here, Plaintiff's limited wage and hour release with the Midas Defendants is acceptable under *Cheeks* and its progeny. Plaintiff's, Herkimer's and Convent's mutual general releases are similarly appropriate. Plaintiff is no longer employed by Herkimer or Convent, and Herkimer and Convent even argue that he was never employed by them. During the course of this litigation, Herkimer raised its alleged claim for unpaid rental payments that it values in excess of $20,000.00. Convent also provided Plaintiff with an on-site apartment, raising the specter of a similar claim by Convent against Plaintiff. Plaintiff, Herkimer and Convent also share a desire to reach a final resolution of all disputes between them and move forward with a clean slate, which is achieved by this agreement. Lastly, Plaintiff does not assert class claims against Herkimer or Convent. Based on discussions with Midas Defendants, it has also become apparent that Plaintiff would be unlikely to pursue his putative class claims against even Midas Defendants, though only discovery would establish this with certainty. As a result, the parties negotiated a resolution on the basis of the individual Plaintiff's clams only.

Additionally, the agreements do not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 177-181 (S.D.N.Y. March 30, 2015)); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Similarly, the agreements do not contain any non-disparagement provisions.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator and a full-day mediation that went well into the evening to resolve. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $29,367.58, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3,

2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiff's counsel's requested fees of less than one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 490 Wheeler Road, Suite 250, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal court.

By way of background, this firm's founder and managing principal, Peter A. Romero, Esq., graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004. Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principal. That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., another associate, Matthew J. Farnworth, Esq., a paralegal, and an administrative assistant, as well as other support staff as needed. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters. Mr. Romero is also an active member of the National Employment

Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Mr. Romero has also been recognized by The Best Lawyers in America for his high caliber of work in the practice area of employment law each year since 2013 and selected as a Super Lawyer in category of "Employment Litigation" for the years 2019, 2020, 2021, and 2022.

The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in 2012. I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in November 2012, in New York State in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014. I have been employed as a senior associate for this Firm since April 2018. Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018. Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Additionally, the undersigned has been appointed as Class Counsel in multiple class action cases. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial and resolution. Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters. I am a member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Finally, I have been selected as a Rising Star by Super Lawyers as an "Employment & Labor Attorney" for the years 2016, 2017, 2018, 2019, 2020, 2021 and 2022 and by Best Lawyers: Ones to Watch for the years 2021 and 2022.

Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $300.00 per hour for the undersigned, David D. Barnhorn, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba. "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $300.00 per hour for the undersigned, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable.[4] Nuno Carrera v. DT Hosp. Grp., 2021 WL

---

[4] While this firm primarily represents clients on a contingency fee basis, we do represent some clients on an hourly basis. In those retainers, depending on each client's respective financial abilities, clients have agreed to compensate Mr. Barnhorn for representation at rates of $300.00 to $500.00 per hour and have agreed to compensate Mr. Romero for representation at rates of $300.00 to $500.00 per hour. Indeed, this firm is currently representing clients on an hourly basis in one matter within this district and those clients are compensating Mr.

6298656, at *12 (S.D.N.Y. Nov. 1, 2021), report and recommendation adopted, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021) (awarding hourly rates of $400.00 for Mr. Romero and $300.00 for the undersigned, Mr. Barnhorn, in FLSA and NYLL action); HRB Prof'l Res. LLC v. Bello, No. 17-CV-7443 (KMK), 2018 WL 4629124, at *8 (S.D.N.Y. Sept. 27, 2018) (collecting cases) (awarding a partner a rate of $440.00 per hour and citing approvingly of cases awarding partners and experienced litigators rates of $400.00 to $600.00 per hour and associates rates of $300.00 per hour); Pineda v. Frisolino, Inc., 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (approving rates for partner and senior associate at $400.00 per hour and other associates at $300.00 per hour in FLSA and NYLL litigation); Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 2018 WL 2976009, at *4 (S.D.N.Y. June 13, 2018) (approving rate of $450.00 per hour for partner, $325 for senior associate, and $275 per hour for junior associate); Payne v. Kirkland, 2017 WL 5952707, at *3-4 (S.D.N.Y. Nov. 30, 2017) (noting partners in small firms have been awarded rates of $550 to $650 per hour, and awarding partner with 13 years of specialized experience in civil rights cases a rate at $475.00 per hour); Polit v. Glob. Foods Int'l Corp., 2017 WL 1373907, at *8 (S.D.N.Y. Apr. 13, 2017) (awarding $300.00 to associate with four years of experience who acted as lead counsel in FLSA case); Torres v. Gristede's Operating Corp., 2012 WL 3878144, at *3 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. Appx. 1 (2d Cir. 2013) (citing Clover v. Shiva Realty of Mulberry, Inc., 2011 WL 1832581, at *1 (S.D.N.Y. May 13, 2011)) (noting, ten years ago, in FLSA and NYLL matter that "[c]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *8 (S.D.N.Y. Sept. 30, 2010) (citing LV v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 518-525 (S.D.N.Y 2010)) (noting, twelve years ago, in FLSA and NYLL matter that "[t]he rates sought by plaintiffs' counsel ($400 for partners, $350 for litigation counsel, $300 for associates with three to seven years of experience, and $200 for associates with one to two years of experience) are consistent with (or lower than) the rates used in other cases involving attorney fee awards..."); Saunders v. City of New York, 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (approving rate, twelve years ago, of $425.00 per hour for partner, $300 for senior associate, and $250 per hour for junior associate with approximately four years of experience in FLSA matters); New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter); New York City Dist. Council of Carpenters Pension Fund v. Quantum Const., 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274

---

Barnhorn and Mr. Romero at an hourly rate of $500.00 per hour for litigation involving FLSA and NYLL claims. Accordingly, the firm's requested rates are well within the normal rates awarded in contingency fee matters and the rates actually received by paying clients.

(E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Here, Plaintiff's counsel investigated the Plaintiff's claims, conducted a detailed inquiry regarding Plaintiff's job duties, hours worked and compensation received, and Defendants' compensation policies, created an assessment of Plaintiff's damages, prepared Plaintiff's Complaint and an Amended Complaint, opposed Defendants' requests for pre-motion conferences for anticipated motions to dismiss the Complaint, participated in contentious settlement negotiations and a mediation, and subsequently negotiated the parties' formal settlement agreement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf. The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

As a result, the Firm expended a total of 97.28 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit B. Thus, Plaintiff's attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $27,788.00. Here, although Plaintiff's lodestar is less than the amount of fees requested under the standard contingency fee method, Plaintiff's counsel's requested fees are well within the range approved by courts when applying a moderate lodestar multiplier.

Where, as here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. See In re Platinum & Palladium Commodities Litig., 2015 WL 4560206 (S.D.N.Y. July 7, 2015). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases they have awarded multipliers that are even higher. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481-482 (S.D.N.Y. 2013) (collecting cases); Zeltser v. Merrill Lynch & Co., 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (collecting cases); see also Riveras v. Bilboa Rest. Corp., Docket No. 17-cv-04430 (S.D.N.Y. Dec. 14, 2018) (See DE 74) (Memorandum and Order approving a lodestar multiplier of 6.7). Plaintiff's counsel's representation in this matter is subject to a contingency retainer, creating an inherent risk that this firm could receive no compensation for its efforts in this action if the lawsuit were not successful or if Plaintiff were unable to collect a judgment. This matter faced significant risks in achieving liability and, if liability were achieved, in assessing the amount of damages. Given the Defendants' modest financial circumstances, the risk of non-payment for this settlement is serious and exceeds the risks associated with a typical settlement. Moreover, Plaintiff's counsel provided quality representation by zealously pursuing Plaintiff's litigation objectives and obtaining a favorable settlement. Here, the multiplier requested is approximately 1.05 which is well within the range granted by courts in this Circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. See Zeltser, 2014 WL 4816134, at *10 (citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)) ("[T]he lodestar create[s] an unanticipated disincentive to early

settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly"); Beckman, 293 F.R.D. at 482 (noting applying multiplier is proper as achieving an early settlement "should not result in penalizing plaintiffs' counsel"); see also Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020) (quoting Sand v. Greenberg, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)) ("Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'"); Zeltser, 2014 WL 4816134, at *8 (quoting Sand, 2010 WL 69359, at *3; and citing Reyes v. Altamarea Grp., LLC, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" and "The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights.").

Additionally, the Court should review the public policy considerations concerning the manner in which attorneys' fees are assessed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing this litigation would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is reached, other attorneys who do wage-and-hour litigation very well might. Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy. Thus, the amount of attorneys' fees sought – $29,367.58 – is a reasonable fee in this action.

Lastly, Plaintiff's counsel seeks reimbursement for $6,897.25 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint, $1,512.75 for service of process for the Summons and Complaint, and $4,982.50 for the mediator's fees. A copy of the applicable invoices for service of process are attached as Exhibit C.

Accordingly, Plaintiff's counsels' requests for attorneys' fees in the amount of $29,367.58 and expenses in the amount of $6,897.25 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement.

We thank the Court for its consideration of these requests.

                                          Respectfully submitted,

                                          _____

                                          DAVID D. BARNHORN, ESQ.

C:       All Counsel of Record *via* ECF